**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:16-cr-00225-GMN-NJK-2 |
| vs. | ) | |
| | ) | **ORDER** |
| JOHN WILLIAM PRINCE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant John William Prince's ("Defendant's") Second Motion for Compassionate Release, (ECF No. 193). The Government filed a Response, (ECF No. 196), to which Defendant filed a Reply,[1] (ECF No. 197).

Also pending before the Court is Defendant's unopposed Motion to Seal, (ECF No. 194), which requests that Defendant's medical records be sealed.

For the reasons discussed below, the Court **GRANTS** Defendant's Second Emergency Motion for Compassionate Release and Motion to Seal.[2]

I.   <u>BACKGROUND</u>

On January 3, 2019, Defendant pleaded guilty to one count of Conspiracy to Distribute a Controlled Substance – Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii), and 846. (Mins. Proceedings, ECF No. 152); (J., ECF No. 172). On July 3, 2019, the Court sentenced Defendant to ninety-seven (97) months' imprisonment, to be

---

[1] Defendant's Reply was due by January 16, 2023, (*see* Resp., ECF No. 196) (setting a January 16, 2023, deadline for Defendant's Reply), but was filed on January 17, 2023. (Reply, ECF No. 197). Thus, Defendant's Reply is untimely. Nevertheless, the Court reviewed and considered the arguments contained in Defendant's Reply in its determination.

[2] The Exhibits Defendant seeks to seal contain his confidential medical records. Accordingly, the Court finds good cause to seal the records. *See, e.g., Johnson v. Tambe*, No. 19-141-TSZ-MLP, 2019 WL 4014256, at *2 (W.D. Wash. Aug. 26, 2019) (finding the plaintiff's privacy interest in his own medical records to be a sufficiently compelling reason to seal the medical records themselves").

1   followed by forty-eight (48) months' Supervised Release with special conditions. (*See* Mins.

2   Proceedings, ECF No. 171); (J., ECF No. 172).  Defendant is presently in custody at the Fort

3   Worth Federal Medical Center ("Fort Worth FMC"). (*See* Second Mot. Comp. Rel. ("Second

4   MCR") 2:21–3:2, ECF No. 193).  On July 10, 2020, filed his first Motion for Compassionate

5   Release, (*see generally* First MCR, ECF No. 175), which this Court denied on December 28,

6   2020. (Order, ECF No. 184).

7        By the instant motion, Defendant again petitions this Court for compassionate release.

8   Defendant requests the Court reduce his ninety-seven (97) month sentence to time served to

9   enable him to begin his forty-eight (48) month term of supervised release. (Second MCR 2:6–

10  8).  Alternatively, Defendant asks the Court to reduce his "sentence to time served, extend his

11  supervised-release term, and add a condition of home confinement for the remainder of his

12  custodial sentence (approximately [fifty-eight] 58 months)." (*Id*. 2:8–11).

13       The Court discusses Defendant's Second Motion for Compassionate Release below.

14  **II.    LEGAL STANDARD**

15       The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the

16  First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), authorizes the sentencing

17  court to modify a defendant's sentence in limited circumstances. 18 U.S.C. § 3582(c)(1)(A).

18  The sentencing court may order compassionate release, "if after considering the factors set

19  forth in 18 U.S.C. § 3553(a)," the defendant has demonstrated: (1) he has exhausted his

20  administrative remedies; (2) "extraordinary and compelling reasons" warrant a reduction in his

21  sentence, and (3) he is not "a danger to the safety of any other person or the community." 18

22  U.S.C. § 3582(c)(1)(A); USSG § 1B1.13.  Under United States Sentencing Guideline § 1B1.13,

23  "extraordinary and compelling reasons" include, among other things, terminal illnesses and

24  medical conditions "that substantially diminish[ ] the ability of the defendant to provide self-

25  care within the environment of a correctional facility and from which he or she is not expected

1   to recover." USSG § 1B1.13.  The court may also consider "other reasons" including a "reason

2   other than, or in combination with" a reason specifically provided in the Sentencing Guidelines.

3   *Id.*  The decision to grant compassionate release is in the sentencing court's discretion. *See*

4   *United States v. Wade*, 2:99-cr-00257-CAS-3, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13,

5   2020).

6   **III.   DISCUSSION**

7          The Government disputes neither that Defendant has exhausted his administrative

8   remedies, nor that Defendant has presented "extraordinary and compelling reasons" for his

9   release in light of his underlying medical conditions[3] and the COVID-19 pandemic.[4] (*See* Resp.

10  Second MCR 3:5–24, ECF No. 196).  As such, the Court's analysis is limited to a discussion of

11  whether Defendant has demonstrated that his release would not present a danger to the public,

12  as well as whether release is warranted under the 18 U.S.C. § 3553(a) factors.

13         Under 18 U.S.C. § 3142(g), an inmate may be granted compassionate release only if he

14  is not a danger to any other person or to the community. *See United States v. Johnson*, No.

15  2:19-cr-0081, 2020 WL 2114357, at *1 (E.D. Wash. May 4, 2020) ("[T]he Court should not

16  grant a sentence reduction if the defendant poses a risk of danger to the community, as defined

17  _____

18  [3] The CDC states that adults with chronic kidney disease and heart conditions, such as heart failure, coronary
    artery disease, or cardiomyopathies, "are at increased risk of severe illness from the virus that causes COVID-
19  19." *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
    precautions/people-with-medicalconditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2F
20  coronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.  Defendant has all of
    these conditions. (*See* Second MCR 3:6–14, ECF No. 193); (Medical Records, Ex. A to Second MCR, ECF No.
21  195).
    [4] Instead, the Government contends that Defendant has not demonstrated that the Bureau of Prisons is denying
22  him adequate care for his conditions, nor has he shown that he is more likely to contract COVID-19 in prison
    than in an alternate setting. (Resp. 3:10–5:3).  As to the Government's latter argument, the persuasiveness of its
23  position is limited by the fact that the Government provides no case law or evidence demonstrating any disparate
    rate of contracting COVID-19 when comparing a confined inmate to an individual under home confinement,
24  instead conceding that it "does not attempt to demonstrate that [Defendant] is more likely to contract COVID-19
    while imprisoned (at FMC-Fort Worth or elsewhere) than while free to live elsewhere or even under home
25  confinement." (*Id*. 3:17–20).  The Court considers the Government's limited opposition but finds that it does not
    negate the extraordinary and compelling reasons presented by Defendant's underlying health conditions.

1  in the Bail Reform Act.").  In assessing whether the Defendant presents a danger to the

2  community, the Court should consider factors such as: (1) the nature and circumstances of the

3  offense charged, including whether the offense involved violence or a controlled substance; (2)

4  the weight of evidence against the defendant; (3) the defendant's history and characteristics,

5  including physical and mental condition, criminal history, and family ties; and (4) the nature

6  and seriousness of the danger posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

7       First, the Court reflects on the "nature and circumstances of the offense."  This factor

8  can be bifurcated into two separate but related inquiries.  The former will examine how courts

9  have broadly considered drug offenses in determining the danger posed by an individual.  The

10  latter will analyze the specific circumstances of Defendant's offense, namely his role in the

11  conspiracy to distribute methamphetamine.

12       Beginning with Defendant's charge for conspiracy to distribute methamphetamine, the

13  Court notes that it takes seriously the destruction drugs cause the community.  Nevertheless,

14  courts have found that a conviction for a non-violent drug offense alone is not enough to

15  demonstrate that a person will be a danger to the community. *See United States v. Matthews*,

16  557 F. Supp. 3d 1057, 1067 (E.D. Cal. 2021) (finding that the nature and circumstances of the

17  defendant's offense weighed in favor of release where he participated in non-violent crimes,

18  specifically taking "part of a drug distribution conspiracy" and further noting that "he was not

19  the leader"); *United States v. Luna*, 478 F. Supp. 3d 859, 863 (N.D. Cal. 2020) ("Luna has

20  demonstrated that a reduction of sentence to time served would pose no danger to public safety

21  where his conviction . . . involved . . . non-violent drug offenses . . . ."); *United States v.*

22  *Fowler*, 445 F. Supp. 3d 452, 453–54 (N.D. Cal. Jun. 6, 2020) (finding that a defendant who

23  had never committed a violent crime, but whose underlying offense was distributing

24  methamphetamine, was not a danger to the community).  Thus, the nature of the offense weighs

25  against a finding that Defendant poses a threat of harm to the community.

1    Turning to the specific circumstances of the offense, courts have denied compassionate

2    release due to concerns about public safety where the defendant had a leadership role in the

3    drug distribution conspiracy. *See United States v. Lopez-Ontiveros*, No. 15-cr-575, 2021 WL

4    165037, at *2 (S.D. Cal. Jan. 19, 2021) ("Although his underlying offense was non-violent,

5    district courts have denied compassionate release when the defendant had a leadership role in

6    or a history participating in drug trafficking schemes, citing concerns about public safety.");

7    *United States v. Amezcua*, No. 1:93-cr-05046, 2022 WL 7693153, at *15 (E.D. Cal. Oct. 13,

8    2022) (noting the defendant's leadership role in a conspiracy to distribute methamphetamine).

9    Here, Defendant did not occupy a leadership position in the conspiracy, instead serving as a

10   middleman. (Second MCR 15:6–13).  Therefore, as with the nature of the offense, the

11   circumstances of the offense similarly weigh against finding that Defendant poses a threat of

12   danger to the community. *See United States v. Kanui*, No. 13-cr-00667, 2022 WL 4120784, at

13   *7 (D. Haw. Sept. 9, 2022) (observing that the defendant's offense conduct placed him as "mid-

14   level distributor, at worst" in finding that compassionate release was warranted).

15    Next the Court will consider the Defendant's history and characteristics, including his

16   physical and mental condition.  Here, Defendant's physical condition has severely deteriorated

17   since the time he committed the underlying offense.  Defendant is currently confined to a

18   wheelchair, has an implanted pacemaker on his chest, is fully oxygen dependent, and has

19   suffered three strokes, to say nothing off his congestive heart failure and kidney disease.

20   (Second MCR 14:11–20); (Medical Records, Ex. A to Second MCR).  Despite Defendant's

21   various medical afflictions, the Court's notes that Defendant's medical conditions "may not

22   hinder [him] from engaging in criminal activity, especially given that Defendant was convicted

23   of offenses conducted out of his own home." (Order 3:19–24).  Further, Defendant has a

24   criminal record which includes another drug distribution charge, as well as a personal history of

25   substance abuse. (PSR ¶ 76, 160).  The Court considers Defendant's prior history criminal and

1   characteristics but finds that his physical condition has deteriorated to such a degree that he

2   does not pose an evident threat of harm to the community.

3         Considering the above, the Court finds that the nature and circumstances of Defendant's

4   offense, when viewed in conjunction to his current physical condition, does not indicate that

5   Defendant's release poses a threat of harm to the community.  Having determined that

6   Defendant does not pose a danger to any other person or to the community under 18 U.S.C. §

7   3142(g), the Court must now examine whether the factors found in 18 U.S.C. § 3553(a) weigh

8   in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a)

9   factors before granting compassionate release).  These factors include: (1) the nature and

10  circumstances of the offense and the history and characteristics of the defendant; (2) the need

11  for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the

12  sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement

13  issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities

14  among defendants with similar records who have been found guilty of similar conduct; and (7)

15  the need to provide restitution to any victims. 18 U.S.C. § 3553(a).

16        For the reasons set forth above, the Court finds that the nature and circumstances of the

17  offense again weigh in favor of release.  Turning to the need for the sentence imposed, the

18  Court's prior Order identified that compassionate release was inappropriate because Defendant

19  had only served fourteen (14) months of his ninety-seven (97) month sentence, or fourteen (14)

20  percent of his prescribed period of incarceration. (Order 5:1–10).  As Defendant had only

21  served a limited amount of his sentence, the Order found that retribution and just punishment

22  warranted Defendant's continued incarceration. (*Id*. 5:11–15).  The prior interests identified by

23  the Court have now diminished to such a degree that Defendant's continued incarceration is no

24  longer warranted.

25  ///

1   Defendant has now served thirty-nine (39) months of his sentence, or approximately

2   forty (40) percent of his prescribed period of incarceration. (Second MCR 17:1–4).

3   Defendant's additional twenty-five months (25) of incarceration has reduced the interest in

4   retribution and just punishment previously identified by the Court.  District Courts within the

5   Ninth Circuit have granted compassionate release to defendants serving significantly less time

6   overall where the other relevant § 3553(a) factors also weighed in the defendant's favor. *See*

7   *United States v. Fowler*, 445 F. Supp. 3d 452, 452 (N.D. Cal. 2020) (granting release for

8   defendant who had served eleven months of sixty-month sentence)*; United States v. Galaz*, 477

9   F. Supp. 3d 1134, 1143 (S.D. Cal. 2020) (collecting authority and granting motion for

10   compassionate release to inmate who had served only fourteen months of sixty-month

11   sentence)*; United States v. Barber*, 466 F. Supp. 3d 1127, 1133–34 (D. Or. 2020) (granting

12   release for defendant who had served less than one year of five-year sentence); *see also United*

13   *States v. Terraciano*, 492 F. Supp. 3d 1082, 1087 (E.D. Cal. 2020).  Therefore, just punishment

14   no longer militates a determination that Defendant's continued incarceration is warranted

15   considering Defendant's underlying health conditions and additional time served.

16   In the Court's prior Order, it further observed that there "can still be some rehabilitation

17   or deterrent value in Defendant remaining incarcerated" because he "provided no evidence of

18   reformative efforts or disciplinary history during his incarceration." (Order 5:6–7).  Defendant

19   has subsequently remedied this deficiency by supplementing his Second Motion for

20   Compassionate Release with certificates marking his completion of courses on drug abuse

21   education and anger management, (*see* Certificates of Completed Courses, Ex. F to Second

22   MCR, ECF No. 193-3), as well as a copy of his disciplinary record which shows he has

23   committed no infractions during his incarceration, (*see* Disciplinary Report, Ex. G to Second

24   MCR, ECF No. 193-4).  The Court acknowledges that "rehabilitation alone is an insufficient

25   basis upon which to grant compassionate release." *United States v. Favela*, No. 1:94-cr-05044,

1   2022 WL 4450496, at *12 (E.D. Cal. Sept. 23, 2022).  Nevertheless, while not dispositive,

2   rehabilitation efforts are "obviously a relevant consideration" which may support the granting

3   of relief. *Id.*  Therefore, Defendant's rehabilitation efforts support a finding that compassionate

4   release is warranted.[5]

5          Based on the foregoing, the Court finds that the § 3553(a) weigh in favor of release.

6   Further, the Government has stated that it "does not oppose home confinement for the

7   remainder of [Defendant's] prison sentence, followed by [forty-eight] 48 months of supervised

8   release . . ." (Resp. Second MCR 7:1–3).  As the § 3553(a) weigh in favor of release, and the

9   Government does not otherwise oppose the imposition of home confinement, the Court will

10  reduce Defendant's sentence to time served, extend his supervised-release term, and add a

11  condition of home confinement for the remainder of his custodial sentence, which is

12  approximately fifty-eight (58) months.  Accordingly, Defendant's Second Motion for

13  Compassionate Release is GRANTED.

14  **IV.    CONCLUSION**

15         **IT IS HEREBY ORDERED** that Defendant's Second Motion for Compassionate

16  Release, (ECF No. 193), is **GRANTED**.

17         **IT IS FURTHER ORDERED** that Defendant's Motion to Seal, (ECF No. 194), is

18  **GRANTED.**

19         Defendant has identified that his sister is willing to provide him with housing upon his

20  release. (Second MCR 17:9–18:11).  **IT IS THEREBY FURTHER ORDERED** that this order

21  is **STAYED for up to fourteen days**, for the verification of Defendant's sister's residence

22

23  _____

24  [5] Moreover, Defendant has disclosed that his sister is willing to provide him with stable housing and
    transportation for needed medical care. (Second MCR 17:9–18:11).  Past decisions by this Court have recognized
25  that the presence of a strong family support system that can provide the Defendant with stable housing and
    support further bolsters a finding of release. *See United States v. Romero*, No. 2:13-cr-00339, at *4 (D. Nev.
    Nov. 29, 2022); *United States v. Oshinski*, 2:14-cr-00284, 2021 WL 2518981, at *2 (D. Nev. June 17, 2021).

1    and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure

2    Defendant's safe release.  Defendant shall be released as soon as a residence is verified,

3    a release plan is established, appropriate travel arrangements are made, and it is safe for

4    Defendant to travel.  There shall be no delay in ensuring travel arrangements.  If more than

5    fourteen days are needed to make appropriate travel arrangements and ensure Defendant's

6    safe release, the parties shall immediately notify the Court and show cause as to why the stay

7    should be extended.  Defendant shall self-isolate for fourteen days in his sister's residence upon

8    his arrival there, as a means of protecting his health and that of the others residing in the home.

9          **DATED** this __17__ day of January, 2023.

10

11   _____

12   Gloria M. Navarro, District Judge
     United States District Court

13

14

15

16

17

18

19

20

21

22

23

24

25